IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re ) | |
| ) | Case No. 09-01023 |
| BOFFI STUDIO DC, LLC, ) | Chapter 11 |
| ) | |
| Debtor. ) | Hearing Date: January 14, 2010 |
| ) | Hearing Time: 2:00 p.m. |
| ) | |

**OPPOSITION OF BOFFI STUDIO DC, LLC TO THE
MOTION OF BOFFI SpA AND BOFFI U.S.A., INC. PURSUANT TO SECTION 365
OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER COMPELLING THE
<u>DEBTOR TO REJECT THE COMMERCIAL AGREEMENT</u>**

TO THE HONORABLE S. MARTIN TEEL, JR., BANKRUPTCY JUDGE:

COMES NOW Boffi Studio DC, LLC ("Debtor"), by and through counsel, Stinson Morrison Hecker LLP, and as its Opposition ("Opposition") to the Motion of Boffi SpA and Boffi U.S.A., Inc., Pursuant to Section 365 of the Bankruptcy Code for Entry of an Order Compelling the Debtor to Reject the Commercial Agreement ("Motion") respectfully states as follows:

1. On November 17, 2009, the Debtor initiated this proceeding by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Petition Date").

2. The Debtor is operating as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On December 21, 2009, Boffi SpA and Boffi U.S.A. Inc., (collectively the "Movants") filed their Motion seeking to compel the Debtor to reject the Commercial Agreement.[1] The Debtor sells high end custom kitchen and bathroom fixtures and equipment under the "Boffi" name through a showroom in Georgetown. The products the Debtor sells are

---

[1] Capitalized terms not otherwise defined are used consistently with the definitions assigned in the Motion.

produced by the Movants and the Debtor's relationship with the Movants is governed by the Commercial Agreement. As a result, the Movants' Motion, set for hearing two weeks before the expiration of the Cash Collateral Stipulation – to which no objections were filed, and which has been approved by this Court – appears to be calculated to increase costs for the Debtor rather than to derive any significant benefit for the Movants. Further, the Movants' suggestion in the Motion that rejection of the Commercial Agreement is the only possible outcome in this case is an unsupportable overstatement at this early date in the case.

4. The Movants make the following arguments in support of their request that this Court compel the Debtor to reject the Commercial Agreement: (i) it appears that the Debtor is unable to cure the monetary defaults under the Commercial Agreement, which the Movants describe as payments due under the second modification to the Commercial Agreement and failure to meet the pre-petition "Turnover Target" for 2008 and 2009 (ii) because the Commercial Agreement allows the Debtor to use the "Boffi" name, it is governed by the Lanham Act which is another "applicable law" that prohibits assignment of the Commercial Agreement, therefore the Debtor is prohibited from assuming it under 11 U.S.C. § 365(c); and (iii) the Debtor's anticipated move to a new location *on the same block* as the existing showroom is an incurable default under the Commercial Agreement which also prohibits assumption.

5. Each of these arguments is addressed in more detail below, none, however, is fatal to the Debtor's ability to cure and assume the Commercial Agreement, or at a minimum, ask the Court for a short, additional period of time in which to decide whether to assume or reject the Commercial Agreement. The Debtor does not dispute that it would have to pay the amounts due and owing under the Commercial Agreement in order to assume it, but according to the Debtor's statement of financial affairs, the Turnover Targets for 2008 and 2009 have been met. Although

the Debtor might not be able to assign the Commercial Agreement to a third party as a result of the Lanham Act's prohibition on assignment of non-exclusive trademark license, the Debtor can assume the Commercial Agreement itself. Further, the non-monetary default asserted by the Movants is not a material term of the Commercial Agreement and therefore should not prevent the Debtor from assuming it.

A. **The Debtor Should Be Permitted An Opportunity to Evaluate Whether It Is Able and Desires to Assume The Commercial Agreement And Cure Any Existing Monetary Defaults.**

6. As explained above, the Debtor acknowledges that § 365 of the Bankruptcy Code requires the Debtor to pay the amounts due and owing under the Commercial Agreement before it can assume the Commercial Agreement.

7. The Motion seeks to deny the Debtor the opportunity to operate through the conclusion of the cash collateral stipulation, much less attempt a successful reorganization.

8. Further, the Debtor's Statement of Financial Affairs indicates that the Debtor has met the financial benchmarks set forth in the Turnover Targets of Article 8 of the Commercial Agreement.

9. To the extent that the Turnover Targets have not been met, this requirement has been waived by the Debtors, and cannot be retroactively applied as a cure obligation. *See In re S & I Investments*, 2009 WL 3233039 (Bankr. S. D. Fla., Oct. 7, 2009) (finding that where a party to the lease had not enforced a lease provision prior to the filing, it could not enforce satisfaction of that provision as part of the cure amount to assume the lease).

10. Far from enforcing the Turnover Targets pre-petition, the Movants demonstrated their willingness to continue working with the Debtor by entering into the two modifications to the Commercial Agreement.

11. Further, the Turnover Targets should not be treated a material term of the Commercial Agreement. *In re Chapin Revenue Cycle Management, LLC*, 343 B.R. 728, 830 (Bankr. M.D. Fla. 2006) The nationwide economic downturn that took place after the Commercial Agreement was entered into was such that even if under other circumstances such a target would be material, it is not in the present case. At the time that the Debtor and the Movants set the Turnover Targets, no one would have anticipated the severity of the recession that took place in the past year.

12. Finally, the Court should not treat the allegation that the Turnover Targets were not met as material in this case because they have been more than offset by the money infused by the principal of the Debtor, Mr. Zein and other entities owned by Mr. Zein. *See* Schedule F and the Statement of Financial Affairs filed on December 16, 2009, Docket Entry No. 22.

**B.    The Intellectual Property at Subject in the Commercial Agreement does not Prevent Assumption of the Commercial Agreement by the Debtor.**

13. The Movants argue that because the Lanham Act prohibits the assignment of non-exclusive trademark licenses, and the Commercial Agreement creates a non-exclusive license to use the Boffi name, 11 U.S.C. § 365(c) prevents the Debtor from assuming or assigning the Commercial Agreement without the Movants' consent.

14. Many courts have concluded, however, that if applicable law only prohibits assignment but not assumption (like the Lanham Act), the debtor can still assume the contract.

15. For example, in *Texaco Inc., v. Louisiana Land and Exploration Co., et al.*, 136, B.R. 658, 671 (M.D. La. 1992) the District Court permitted the debtor in possession to assume the mineral and gas leases at issue even though the "applicable law" prohibited assignment of the leases. The District Court explained the argument similar to that advanced by the Movants in this case as follows:

> The proposition tends to defeat the basic bankruptcy purpose of enhancement of the bankruptcy estate for benefit of rehabilitation and the general creditors upon a highly technical "hypothetical" test which furthers no bankruptcy purpose at all. It would allow one disgruntled creditor to frustrate payment of claims to other creditors or rehabilitation, contrary to the whole purpose of bankruptcy.

*Id.*

16. Similarly, in *In re Footstar, Inc.*, 323 B.R. 566 (Bankr. S.D.N.Y. 2005) the court held that the restriction in 11 U.S.C. 365(c) only applied to trustees, and not to a debtor-in-possession. The *Footstar* court noted that although it employed different reasoning, it was following the majority position. It explained:

> One Circuit Court in two separate decisions, *Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489 (1st Cir.), *cert. denied,* 521 U.S. 1120, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997) and *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608 (1st Cir.1995), and the great majority of lower courts have taken the view that the courts should apply an "actual test" in construing the statutory language so as to permit assumption where the debtor in possession in fact does not intend to assign the contract.

*Id*. at 569.

17. The Fifth Circuit also follows this "actual" test. *In re Mirant Corp*., 440 F.3d 238, 248-49 (5th Cir. 2006).

18. The Debtor urges this Court to follow the First and Fifth Circuits and the majority of lower courts and hold that the Debtor may choose to assume the Commercial Agreement even though under "applicable law" it would not be permitted to assign the Commercial Agreement to a third party.

**C.    The "Incurable Non-Monetary Default" Cited By the Movants Has Yet to Occur And In The Event That It Does Occur Is Not Material To The Commercial Agreement.**

19. "Where the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default caused

'substantial economic detriment.'" *In re Chapin Revenue Cycle Management, LLC*, 343 B.R. 728, 830 (Bankr. M.D. Fla. 2006) (internal citations omitted).

20. In this case the Movants argue that because the Debtor is considering relocating to a different storefront that is in the same area, and even on the same block, this is an incurable default under the Commercial Agreement.

21. However, the Movants' argument fails because (i) the Debtor has not yet relocated and so there has been no breach, and (ii) even if the Debtor eventually relocates to a different location in the same general area it is simply not a material term of the Commercial Agreement that the Debtor remain in the exact location of its present showroom. The move would be geographically *de minimus*, thus allowing the Debtor to continue to market to the exact same potential clientele that it currently reaches.

22. The Debtor has the right under § 365 of the Bankruptcy Code to determine whether the assumption or rejection of the Commercial Agreement is in the Debtor's best interest. Nothing presented by the Movants in the Motion is sufficient reason to force the Debtor to reject the Commercial Agreement.

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that this Court deny the relief requested in the Motion of Boffi SpA and Boffi U.S.A., Inc., Pursuant to Section 365 of the Bankruptcy Code for Entry of an Order Compelling the Debtor to Reject the Commercial Agreement.

Dated:  January 5, 2010                                         Respectfully submitted,

/s/ Katherine M. Sutcliffe Becker
Marc E. Albert, No. 345181
Katherine M. Sutcliffe Becker, No. 481394
STINSON MORRISON HECKER LLP
1150 18th Street, N.W., Suite 800
Washington, DC 20036
Tel. (202) 785-9100
Fax (202) 785-9163
malbert@stinson.com
kbecker@stinson.com
*Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 5th day of January, 2010, a copy of the foregoing Opposition to the Motion of Boffi SpA and Boffi U.S.A., Inc., Pursuant to Section 365 of the Bankruptcy Code for Entry of an Order Compelling the Debtor to Reject the Commercial Agreement was served via ECF or first class mail, postage prepaid, upon the following:

Office of the United States Trustee
115 South Union Street
Suite 210
Alexandria, VA 22314

David J. Ervin, Esq.
Kelley Drye &Warren LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108

James S. Carr, Esq.
Jason Alderson, Esq.
Kelley Drye &Warren LLP
101 Park Avenue
New York, New York 10178

                                              /s/ Katherine M. Sutcliffe Becker
                                              Katherine M. Sutcliffe Becker